IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROGER KEITH, Individually and as<br>Co-Executor of the Estate of Ernest V.<br>Keith, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN W. GIBSON, ESQUIRE, and<br>GIBSON & PERKINS, PC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 10-026-GMS |

## MEMORANDUM

## I. INTRODUCTION

On January 11, 2010, Roger Keith ("Keith"), individually and as co-executor of the estate of Ernest V. Keith ("Ernest Keith"), commenced this legal malpractice action against Kevin W. Gibson ("Gibson") and Gibson & Perkins, P.C. ("G&P") (together, the "defendants"), alleging claims for negligence, *respondeat superior* and breach of contract. (D.I. 1.) Presently before the court is the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (D.I. 12.) For the reasons that follow, the court will grant the defendants' motion.

## II. BACKGROUND[1]

Keith, Ernest Keith, and Keith's sister Marlene and brother-in-law John Koutoufaris (the "Koutoufarises") (collectively, the "Family"), together with various entities owned by members of the Family, owned multiple parcels of real estate and businesses in Dover, Delaware. (D.I. 1 at ¶ 6.) In the early 1990s, Ernest Keith bought several additional parcels, conveying one (the "Koutoufaris Enterprises Parcel") to the Koutoufarises in early 1992 for $500,000. (Id. at ¶¶ 8-9.) The Koutoufarises transferred the Koutoufaris Enterprises Parcel to Koutoufaris Enterprises, Inc. ("Koutoufaris Enterprises") in April 1992. (Id. at ¶ 9.) On June 10, 1993, Koutoufaris Enterprises executed a mortgage on the property in favor of Ernest Keith in the amount of $485,350. (Id. at ¶ 10.) Under the terms of the mortgage, the entire debt was to be due and payable in February 1994, and Ernest Keith agreed to release the mortgage upon payment of $25,000. (Id. at ¶¶ 10, 32.)

By February 1994, the Koutoufarises experienced financial difficulties and decided to restructure their business affairs by seeking a loan for $3,250,000. (Id. at ¶¶ 11-12.) The Koutoufarises retained Norris P. Wright, Esquire ("Wright") of Morris, James, Hitchens & Williams ("MJHW") in April 1994 for advice on tax and estate planning issues in connection with their efforts to refinance and consolidate their existing debt obligations, satisfy their creditors and repay the mortgage loan obligation to Ernest Keith. (Id. at ¶ 13.) On June 9, 1994,

---

[1] The following facts are taken from Keith's complaint. The court also refers to previous judicial opinions in the related matters which are referenced in Keith's complaint and are matters of public record. "In reviewing a motion to dismiss, '[c]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.'" *Collins & Aikman Corp. v. Stockman*, Civ. No. 07-265-SLR-LPS, 2010 WL 184074 at *3 (D. Del. Jan. 19, 2010) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

the Koutoufarises obtained a loan commitment letter from Unicorn Commerce Limited in the amount of $3,250,000. (Id. at ¶ 14.) The identity of the lender changed to the Usher Trust in July 1994, and subsequently, to Charmeuro Limited ("Charmeuro") in August 1994, and the amount of the loan increased to $6,950,000. (Id.) On July 7, 1994, John Koutoufaris met with Wright regarding the closing of the loan. (Id. at ¶ 15.) On September 16, 1994, a settlement was conducted with Charmeuro in which the documents were signed and the loan was set to fund no later than September 30, 1994. (Id. at ¶¶ 20-21.) Ernest Keith and Keith subordinated second mortgages held by them on certain properties titled to Patriot Enterprises, L.L.C. ("Patriot"), a limited liability company owned by the Koutoufarises. (Id. at ¶¶ 20, 22.)

Also beginning in February 1994, Keith consulted with William S. Hudson, Esquire ("Hudson") regarding the potential sale of the Koutoufaris Enterprises Parcel and two additional parcels owned by Ernest Keith to the Von Croy Trust of Germany (the "Von Croy Trust"). (Id. at ¶ 16.) The Von Croy Trust agreed to buy the parcels for an aggregate sum of $1,125,000, with a scheduled closing date of October 7, 1994. (Id. at ¶ 17.) Keith met with Wright in September 1994 to discuss the allocation of the proceeds of the transaction among the Family members and the entities which owned the parcels. (Id. at ¶¶ 18-19.)

On October 6, 1994, Wright drafted a letter for the Koutoufarises to provide to their major creditors regarding the status of the refinancing funds. (Id. at ¶ 22.) The letter stated as follows:

> John and Marlene Koutoufaris, through their limited liability company known as Patriot Enterprises, L.L.C., have acquired refinancing in an amount sufficient to take care of all liens and debts currently owned by them, including Internal Revenue Service tax liens. The paper closing on the refinancing took place approximately two weeks ago, and we are awaiting funding of the refinancing

through the lenders accounts at Credit Suisse, their Swiss banking institution. We
are informed that it takes approximately two week for such funding to take place.
We have no reason to believe that this funding will not be completed within the
next week or so.

(Id.) The Koutoufarises provided this letter to Keith and Ernest Keith due to their status as major

creditors of the Koutoufarises. (Id. at ¶ 23.) The next day, another attorney from MJHW

verbally assured Keith that MJHW would receive the loan proceeds from Credit Suisse and

checks had already been written to satisfy the second mortgage loan obligation owed to Keith.

(Id. at ¶ 25.) Based on these assurances, Keith and Ernest Keith assented to and cooperated in

the closing of the sale to the Von Croy Trust and the allocation of the proceeds from the sale in

the manner that had been recommended by Wright. (Id.)

Ernest Keith released his mortgage on the Koutoufaris Enterprises Parcel in exchange for

$50,000 paid from the Koutoufarises' share of the sale proceeds and a personal note for $435,000

for the balance of the debt that had been secured by the mortgage. (Id.) The Charmeuro loan

was never funded. (Id. at ¶ 26.) The Koutoufarises and their entities filed a Chapter 11

bankruptcy petition and, as a result, Ernest Keith never received payment of his $435,000 note

and Keith never received payment of the $165,000 owed on the second mortgage. (Id.)

Ernest Keith died on May 13, 1996. On October 4, 1996, Keith retained Gregory A.

Sioris, Esquire ("Sioris") to bring a legal malpractice action against Wright and MJHW, with

Henry A. Heiman, Esquire ("Heiman") and the law firm of Heiman, Aber, Goldlust & Baker

("HAGB") serving as co-counsel. (Id. at ¶ 27.) Sioris, Heiman and HAGB commenced an

adversary proceeding on behalf of the Koutoufarises and the estate of Ernest Keith for legal

malpractice against MJHW and Wright in the bankruptcy court. (Id. at ¶ 28.) On March 20,

4

2002, the bankruptcy court entered an order granting MJHW's motion for summary judgment "for the reasons stated in Court on February 25, 2002." (Id. at ¶ 31.) At that hearing, the bankruptcy judge concluded that even if MJHW and Wright had been negligent, Ernest Keith did not suffer a legally cognizable injury by relying on the advice of Wright and MJHW because Ernest Keith became legally obligated to release the mortgage on the Koutoufaris Enterprises Property upon his receipt of $50,000 from the Koutoufarises, which exceeded the $25,000 release fee specified in the mortgage. (Id. at ¶ 32.)

Sioris and Heiman appealed to this court on behalf of the Koutoufarises and the estate of Ernest Keith. (Id. at ¶ 33.) By order entered June 25, 2002, the court dismissed the appeal for failure to prosecute, finding that Sirois and Heiman failed to file an opening brief in support of their appeal or seek an extension of time in which to do so. (Id.) Sioris and Heiman appealed to the Third Circuit, which affirmed the dismissals in its opinion filed August 18, 2003. (Id. at ¶ 34.)

Keith retained G&P and Gibson to represent him in connection with a claim for legal malpractice against Sioris, Heiman and HAGB. (Id. at ¶ 35.) The parties executed a letter agreement (the "Letter Agreement"), which provided that Keith "[would] be notified of all significant developments, and we will consult with [Keith] with respect to any significant decisions related to those developments." (Id. at ¶ 36.) On February 24, 2005, Gibson filed a legal malpractice complaint on behalf of Keith without providing a draft to Keith for his review prior to the filing. (Id. at ¶ 39.) According to Keith, Gibson and G&P failed to allege facts illustrating the existence of an attorney-client relationship between Keith and Ernest Keith and Wright and MJHW. (Id. at ¶ 40.) On January 10, 2007, the Superior Court granted a motion for

5

summary judgment filed by Heiman and HAGB as to all claims in the complaint and dismissed the matter. (Id. at ¶ 41.) Gibson and G&P moved for reargument, which the Superior Court denied on May 7, 2007. (Id.) The Superior Court noted that Gibson and G&P failed to assert or argue that any direct attorney-client relationship existed between Ernest Keith and Wright and MJHW in concluding that the relationship between Ernest Keith and the Koutoufarises was not fiduciary in nature. (Id. at ¶ 43.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). A complaint does not need detailed factual allegations, but it must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The assumption of truth does not apply, however, to legal conclusions couched as factual allegations, or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not shown –

that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).

## IV. DISCUSSION

### A. Negligence and *Respondeat Superior*

Under Delaware law, a plaintiff pursuing a legal malpractice claim must prove: "employment of the attorney and the attorney's neglect of a reasonable duty, as well as the fact that such negligence resulted in and was the proximate cause of loss to the client." *Pusey v. Reed*, 258 A.2d 460, 461 (Del. Super. 1969), *overruled on other grounds, Starun v. All Am. Eng'g Co.*, 350 A.2d 765 (Del. 1975); *see also David B. Lilly Co., Inc. v. Fisher*, 18 F.3d 1112, 1120 (3d Cir. 1994) (applying Delaware law and citing *Pusey* for the three elements of a legal malpractice claim in Delaware as described above). "The requirement of proving a 'case within a case' or a 'lawsuit within a lawsuit' is a distinctive feature of legal malpractice actions," adding another layer to the element of proximate cause by requiring the jury to predict the hypothetical outcome of the underlying litigation before finding liability in the malpractice action. *McKenna v. Forsyth & Forsyth*, 280 A.D.2d 79, 82 (N.Y. App. Div. 2001) (internal citations omitted). In the instant action, Keith must prove "a case-within-a-case-within-a-case"[2] by demonstrating that he would have prevailed in the initial action for malpractice against Wright and MJHW, and subsequently would have prevailed in his legal malpractice action against Sioris, Heiman and HAGB.

---

[2]In a case bearing a striking resemblance to the instant case, the United States District Court for the Northern District of Illinois noted that the plaintiff "has either been more sinned against than a sinner or he is a professional litigant; whichever the case, this is the end of the saga." *McKnight v. Dean*, 2000 WL 696796, at *1 (N.D. Ill. May 30, 2000).

The court concludes that Keith has failed to state a claim upon which relief can be granted with respect to the negligence claim because the complaint fails to establish either a direct or implied attorney-client relationship with Wright or MJHW in the underlying action. Absent an express contract, a claim of legal representation can be made by implication where, among other requirements, the attorney expressly or impliedly agreed to render such assistance and it is reasonable for the putative client to believe the attorney was representing him. *Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993) (citing *Sheinkopf v. Stone*, 927 F.2d 1259, 1264 (1st Cir. 1991)). The court finds the complaint to be devoid of factual allegations suggesting that Keith had reason to believe that Wright or MJHW represented Keith or Ernest Keith. Rather, all of Keith's alleged discussions with Wright appear to have occurred in the context of MJHW's representation of the Koutoufarises in their real estate and financing transactions.

Specifically, the complaint alleges that Keith and Ernest Keith sought advice from Wright and MJHW in connection with the Von Croy transaction, which involved the sale of a parcel owned by the Koutoufarises to pay the Koutoufarises' creditors, including Keith and Ernest Keith. (D.I. 1 at ¶ 18.) It was not reasonable for Keith and Ernest Keith, as major creditors of the Koutoufarises, to believe that Wright and MJHW would represent Keith and Ernest Keith's interests in the transaction despite knowing that Wright and MJHW had been retained by the Koutoufarises. Other alleged topics of discussion between Keith and Wright, such as the planned expansion of Koutoufaris-owned property onto land titled to Ernest Keith and Ernest Keith's subordination of a second mortgage held by him against the Koutoufarises, were part of the anticipated refinancing in which Wright and MJHW represented the Koutoufarises. (Id. at ¶ 19.) Moreover, contrary to Keith's characterization, the October 6, 1994 letter drafted by Wright for

8

the Koutoufarises' creditors further indicates that Wright and MJHW's relationship with Keith

and Ernest Keith was adversarial. (Id. at ¶¶ 22-23.)

Because the court concludes that Keith could not have prevailed against Wright or

MJHW in the underlying action, it follows that Keith has no chance of success in his action

against Gibson and G&P. As a result of Keith's failure to state a cognizable claim against

Gibson for negligence, his *respondeat superior* claim against Gibson and G&P must also be

dismissed.[3]

### B. Breach of Contract

Keith's breach of contract claim also fails under Rule 12(b)(6) because Keith cannot

prove damages caused by Gibson's alleged breach of the Letter Agreement, which would require

a showing that Keith would have prevailed in the underlying action against Wright and MJHW.

Moreover, "in the context of legal malpractice, a claimant cannot assert both negligence and

breach of contract claims based on the same conduct because tort claims and breach of contract

claims are not alternative theories of recovery for the same acts." *Edelstein v. Goldstein*, 2011

WL 721490, at *7 (Del. Super. Mar. 1, 2011) (citing *HealthTrio, Inc. v. Margules*, 2007 WL

544156, at *11 (Del. Super. Jan. 16, 2007)). Keith's causes of action for both negligence and

breach of contract allege that the defendants failed to conduct a sufficient investigation of the

facts, failed to allege a sufficient basis for a cause of action against Sioris, Heiman and HAGB,

and failed to timely confer with Keith and obtain Keith's approval of pleadings, among other

---

[3]The doctrine of *respondeat superior* provides that "an employer is liable for the torts of his employee committed while acting in the scope of his employment. The liability thus imposed upon the employer arises by reason of the imputation of the negligence of the employee to his employer through application of the doctrine of *respondeat superior*." *Fields v. Synthetic Ropes, Inc.*, 215 A.2d 427, 432 (Del. 1965).

things.  (D.I. 1 at ¶ 46.)  As a result, Keith's cause of action for breach of contract cannot survive the defendants' motion to dismiss under Rule 12(b)(6).

## V. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is GRANTED.  An appropriate order shall issue.

Dated: April 20, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROGER KEITH, Individually and as Co-Executor of the Estate of Ernest V. Keith, Deceased,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KEVIN W. GIBSON, ESQUIRE, and GIBSON & PERKINS, PC, *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>C.A. No. 10-026-GMS |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1. The defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6)

(D.I. 12) is GRANTED.

Dated: April 2.0, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE